IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| PETER WESTRICK, | ) | |
| JERRILOVE CROCKETT, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiffs, | ) | _____ |
| | ) | |
| v. | ) | |
| | ) | |
| KARLA PAYNE ABERCROMBIE; | ) | |
| CHERRY BLOOM HOMES | ) | |
| & DESIGNS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiffs Peter Westrick and Jerrilove Crockett (the "Owners") hereby file

their Complaint against the Defendants and state as follows:

## INTRODUCTION

In early 2019, the Owners decided to build their dream vacation home in

beautiful Ellijay, Georgia.  They hired Ms. Abercrombie and Cherry Bloom Homes

to build their home, and trusted them to honor their contract and word.

Unfortunately, their trust was misplaced.  Although Ms. Abercrombie has been

paid in full, she refuses to fix a significant amount of defective and incomplete

work with the home.  Instead, she has demanded more money from the Owners

and placed a lien on their property.  The Owners have attempted to work with the

Defendants to resolve this matter, and even allowed the Defendants to inspect their home. The Defendants, however, continue to demand payments which they are not owed. The Owners have been left with no choice but to file this action to defend their property and rights.

## **PARTIES**

1.      Plaintiffs Peter Westrick and Jerrilove Crockett are husband and wife, whose home is in Savannah, Tennessee. They have lived in Tennessee for more than 15 years and are citizens of Tennessee. They are both owners of their vacation home in Ellijay, Georgia, that is the subject of this lawsuit.

2.      Defendant Karla Payne Abercrombie is a citizen of Georgia, and the owner of Cherry Bloom Homes, LLC. She resides at 1799 Boardtown Road, Ellijay, Georgia 30540, and may be served with process at that address or wherever she may be found.

3.      Defendant Cherry Bloom Designs, LLC, is a Georgia LLC, with its principal place of business in Ellijay, Georgia. Its registered office is located at 1799 Boardtown Road, Ellijay, Georgia 30540. It may be served through its registered agent and officer, Karla Abercrombie, or any other officer of the company. Upon information and belief, the only member of the LLC is Ms. Abercrombie, a Georgia citizen. Ms. Abercrombie and Cherry Bloom Homes

essentially operate as one and the same entity.  The company is licensed as a residential basic contractor company in Georgia.

## JURISDICTION and VENUE

4.     Federal Diversity Jurisdiction exists in this Court under 28 U.S.C. § 1332.  The Owners are citizens of Tennessee.  They have maintained their Tennessee residence as their primary residence for the past 15 ½ years.  They are both registered to vote in Tennessee, they have Tennessee drivers' licenses, their health insurance is with Blue Cross Blue Shield of Tennessee, and they pay their taxes in Tennessee.  Accordingly, complete diversity exists between the Plaintiffs (Tennessee) and Defendants (Georgia) in this matter.

5.     The amount in controversy also exceeds $75,000 exclusive of interest and costs.  The Owners are husband and wife, and they are both owners of their Ellijay home.  Additionally, they entered into the construction contract, as one party, with the Defendants (who also entered into the contract as one party).  A copy of the contract is attached hereto as Exhibit "A."  Accordingly, they have a common and undivided interest in the damages they seek from the Defendants.

6.     The initial price of the contract was approximately $403,960, although the Owners eventually paid the Defendants close to $700,000 to build the home. The Owners obtained an estimate to fix the defects and finish the incomplete work that is the subject of this dispute, from a licensed residential contractor on April 13,

2021.  The estimate to complete the disputed work on the home totals approximately $82,812.50.  (*See* Preferred Custom Builders estimate, attached hereto as Exhibit "B").  The Defendants have also filed a lien on the Owners' Ellijay home for approximately $45,853.72, for money they are not owed.  The Owners rightfully seek a declaration from the Court that the lien be cancelled, as well as damages for slander of title.  The Owners additionally seek attorneys' fees under Section 21 of the construction contract, as well as under O.C.G.A. § 13-6-1.  Furthermore, the Owners seek punitive damages.  Accordingly, the amount in controversy is satisfied, and diversity jurisdiction exists in this Court.

7.      Venue is appropriate in the Northern District of Georgia, Gainesville Division, under 28 U.S.C. §§ 1391, 90, and LR 3.1.  Ms. Abercrombie lives in Ellijay, Georgia.  The principal place of business of Cherry Bloom Homes, LLC is in Ellijay.  Additionally, the subject of this lawsuit, the Plaintiffs' vacation home, is located in Ellijay.

## FACTS

8.      On or about April 2019, the Owners hired Ms. Abercrombie and Cherry Bloom Homes, LLC to build their dream vacation home located at 269 Antler Ridge (Lot #7), Ellijay, Georgia (their "Ellijay Home").  They entered into a contract for the construction of the home, with Ms. Abercrombie and her company

Cherry Bloom Homes, LLC.  A copy of the contract is attached hereto as Exhibit "B".

9.      Construction proceeded on the house by the Defendants through the end of 2019 and into 2020.  The Owners trusted the Defendants and paid them promptly and without reservation throughout the course of the project.  The Owners were living at their home in Tennessee throughout construction, and would come to Ellijay periodically to check on the progress of their Ellijay home.

10.     In mid-September 2020, the Owners came to their Ellijay home to deliver appliances.  At that time, the house was not finished.  Among other things, the island had not been installed, no range hood or shelves had been installed, the house was only partially painted, the decks had not been stained, none of the light fixtures had been installed, and the hardware for the doors was not complete.  There was still a significant amount of work to be performed by the Defendants at this time.

11.     Ms. Abercrombie had previously told the Owners that they could move into the home on October 9, 2020.  Then, just four days before they were set to move in, Ms. Abercrombie sent the Owners a final bill for $69,858.  She wrote in the bill, "This is the dreaded time where we know our bottom line for what your home will cost."  She also wrote that she had "pulled all of our invoices for the job

for Final payment," and that the bill must be paid by October 31, 2020.  There was no notice that she would be submitting this bill to the Owners.

12.     The Owners were shocked at the amount of this final bill that was given to them with no notice.  They requested the invoices from Ms. Abercrombie that justified the $69,858.  Ms. Abercrombie then forwarded some, but not all, of the invoices to the Owners for the $69,858 final bill.

13.     After receiving the final bill of October 5, 2020 from the Defendants, Mr. Westrick went to the house on October 20th to look at the house and install a mailbox.  Ms. Abercrombie was also at the house when Mr. Westrick was there. At that time, Mr. Westrick pointed out a number of items to Ms. Abercrombie that still had not been completed.  Among other things, floating shelves had not been installed, and gas logs from both fireplaces had not been installed.  Mr. Westrick also pointed out a number of defects with the house.  These included, among other things, chipped kitchen counter tops, the master tub was damaged, the tile floors were uneven, the kitchen cabinets were damaged, polyurethane was missing from parts of the floor, the wood walls and floors had chips and holes in them, and paint was missing around the front door.  In response, Ms. Abercrombie told Mr. Westrick that she was not yet finished with the work on the home.

14.     Upon reviewing project profitability statement received from Ms. Abercrombie for the final bill, the Owners discovered that Ms. Abercrombie had

charged them $5,125 for a garage door.  The house, however, does not have a garage.  Ms. Abercrombie therefore agreed to accept a final payment of $64,733.

15.     When Ms. Crockett arrived at the house on October 30, 2020 to give the final check to Ms. Abercrombie in the amount of $64,733, the Defendants still had not repaired the defects or finished the home.  Ms. Crockett and Ms. Abercrombie walked through the home at that time, and Ms. Crockett pointed out the items that had not been completed and needed to be fixed.  Ms. Abercrombie stated that she was going to finish the home and repair the defects.  Based on Ms. Abercrombie's representations to the Owners that she would finish the home and repair the defects, and so they could move into their vacation home, they paid her in full on October 30, 2020.

16.     When the Owners moved in on November 8, 2020, they immediately noticed that the Defendants had not finished or repaired a significant number of the items they said would be completed.  They also noticed other items that needed to be repaired, including a leaking sink, a leaking toilet on to the hardwood floor, and issues with the lights.  Ms. Crockett sent Ms. Abercrombie a text stating that they had immediately noticed problems with the home.  In response, Ms. Abercrombie told the Owners to live in the house a few weeks and then let her know all the items that needed to be completed and repaired, as they come back to homes within around 30 days to take care of any outstanding repairs.  Per Ms. Abercrombie's

request, the Owners sent Ms. Abercrombie the list of items that need to be repaired/completed on November 24, 2020.

17.     When the Owners submitted the November 24, 2020 list to Ms. Abercrombie, she refused to come back to the home to finish her work and fix the defects.  She wrote the Owners, stating that certain items on the list they submitted were "insane," and that they were being too picky.  Then, without any notice or basis, Ms. Abercrombie submitted a new "Final Payment" bill to the Owners – this time in the amount of $45,853.72.  She insisted that she be paid this amount and, after receiving payment, she would then look at the items the Owners said needed to be repaired and finished.  This new "Final Bill" is without any basis, and the Owners rightfully did not pay it.

18.     Before the Owners moved into the home, Ms. Abercrombie told them that she would obtain the certificate of occupancy for the home and send it to them. She never did and the Owners unknowingly moved into a home that did not have a certificate of occupancy.  In February 2021, the Owners had to submit documentation and pictures to the local building/housing department in order to obtain the certificate of occupancy for the home.

19.     On January 27, 2021, the Owners gave the Defendants another opportunity to complete their work and fix the defects with the home, by sending them notice of the Right to Repair under OCGA § 8-2-35, *et seq.*  The Notice

contained another detailed list of the items that are defective and/or need to be finished to complete the home.  A copy of that letter with the list is attached hereto as Exhibit "C".

20.    In response, the Defendants put a lien on the Owners' home in the amount of $45,853.72.  Following the placement of the lien on their property, the Owners continued to give Ms. Abercrombie the opportunity to fix and finish the home, by allowing her to inspect their home.

21.    Unfortunately, after inspecting the home, the Defendants continue to demand that they be paid another $45,853.72; and that is just for them to come back to work on the home.  The Defendants further insist that they be paid additional funds to actually fix and finish their defective and incomplete work – work for which they have already been paid.  Their demand for thousands more in payment, coupled with a lien on the Owners' property, is without any basis and is put forth in bad faith.

22.    After numerous attempts to work with the Karla Abercrombie and Cherry Bloom Homes, the Owners were left with no choice but to seek relief through this Court.

## COUNTS

### Count I
### Breach of Contract/Warranty
### (All Defendants)

23.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

24.     The Owners entered into a valid Contract with the Defendants.

25.     The Owners fully performed under the Contract.

26.     The Defendants materially breached the Contract by performing defective work, as set forth in the list of items included in the January 27, 2021 letter to the Defendants.  The Defendants breached, among others, Sections 1, 2, 4, 6, 16, and 18 of the Contract.  The Defendants also breached the Representations and Warranties Section of the Contract.

27.     The defective work was not in accordance with the plans and specifications, was not performed in a workmanlike manner, and was not in accordance with industry practices, building codes, and other laws.

28.     The Defendants also failed and refused to complete the work they were paid to perform, which has, among other things, caused significant delays in the completion of the home.

29.     Defendants also warranted that they would promptly correct any defective and nonconforming work, as set forth in Section 6 of the Contract.

30.     The Defendants breached their warranty by refusing to repair and complete the work after being notified of the defects and unfinished work by the Owners.

31.     The Owners have suffered damages as a result of the Defendants' breaches.  These damages include costs to repair and complete the home, delays in completion of the work, and other damages.

WHEREFORE, PREMISES CONSIDERED, the Owners seek at least $82,812.50 for the Defendants' breach of contract, plus all costs, interest, and other relief this Court deems appropriate.

**Count II**
**Negligence**
**(All Defendants)**

32.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

33.     Defendants owed a duty to Plaintiffs to perform all work on the Project in accordance with industry standards, and in accordance with the requisite skill and care of other contractors in the industry.

34.      Defendants also owed an individual duty to supervise and manage the work on the Project to ensure that it was done in a workmanlike manner, according to industry standards, and otherwise in a non-negligent manner.

35.     As set forth herein, the Defendants breached their duties owed to the Owners by failing to perform work in accord with industry standards, and with the requisite skill and care of other contractors/builders under similar conditions and circumstances.  Defendants also failed to properly manage the subcontractors on the project.  Defendants have also breached their duties by performing work that is clearly and palpably unacceptable and defective.

36.     The Owners have been damaged as a result of the Defendants' breaches.  These damages include costs to repair defective work, costs to complete the work on the home, delays in completion of the home, and other damages.

WHEREFORE, PREMISES CONSIDERED, the Owners seek damages of at least $82,812.50, plus all costs, expenses, fees, and other relief deemed proper by the Court.

## Count III
## Declaratory Judgment
## (All Defendants)

37.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

38.     Defendants have filed a lien on the Owners' Property, alleging it to be filed under OCGA 44-14-361.1.  The lien is in the amount of $45,853.72.

39.     A substantial controversy exists between the Owners and the Defendants having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

40.     Under O.C.G.A. § 9-4-1, *et seq*., in actual controversies, the Court has the power to declare rights and other legal relations of any interested party petitioning for such declaration.

41.     The Owners dispute that Defendants are entitled to the funds.

42.     A judicial declaration of each party's rights, status, and interests related to the lien is necessary to settle and afford the parties relief from the uncertainty created by the lien.

43.     By naming the Owners in the lien, the Owners have been injured and their legal rights are in direct issue or jeopardy.

44.     By filing a lien for funds that the Defendants are not owed, Defendants cast an impermissible cloud over the Property that causes damages to the Owners.

45.     Defendants filed the lien and demanded more money only after being notified of the defective work and items that need to be completed on the Project. Defendants' lien has been filed in bad faith and has no basis.

46.     The Owners need relief to settle the uncertainty and insecurity with respect to the rights, status, and other legal relations arising from the Defendants' lien.

47.     Plaintiffs are entitled to a judgment declaring the lien of the Defendants as improper and unenforceable.

WHEREFORE, PREMISES CONSIDERED, the Owners pray that this Court declare the lien filed by the Defendants on the property in the amount of $45,853.72 to be void and unenforceable, and to award all other relief deemed appropriate.

**Count IV**
**Slander of Title**
**(All Defendants)**

48.     The Owners adopt and incorporate all preceding paragraphs as if set forth in full herein.

49.      The Defendants have published slanderous or libelous words regarding the Owners' property by filing an improper lien with no basis.

50.     The statements were made in a malicious manner, as the Defendants knew or should have known they were untrue.

51.     The Owners possess an estate/interest in the property slandered.

52.     The Owners have sustained special damages as a result, including costs to remove the lien, attorney's fees for this action, and other out of pocket damages.

53.     The Owners are entitled to judgment against the Defendants for damages.

WHEREFORE, PREMISES CONSIDERED, the Owners seek all damages allowed under the law, plus all interest, costs, fees, and any other relief that is deemed appropriate.

### Count V
### Fraudulent Misrepresentation
### (Karla Abercrombie)

54.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

55.     Ms. Abercrombie misrepresented material facts to the Owners.

56.     Ms. Abercrombie misrepresented that she would repair her defective work on the home.  Ms. Abercrombie also misrepresented that she would complete the work on the home which was unfinished.

57.     Ms. Abercrombie intentionally made these misrepresentations of fact so that the Owners would pay the final payment of $64,733 before they moved into the home on November 8, 2020.  Ms. Abercrombie also made the

misrepresentations to avoid coming back to the home to fix her defective work and complete the home, as she was obligated to do.

58.     Ms. Abercrombie had knowledge that these misrepresentations were false at the time she made them, or said misrepresentations were made with reckless disregard as to whether they were true.

59.     Ms. Abercrombie made these verbal misrepresentations to Peter Westrick, on or about October 20, 2020, when they looked at the house together.

60.     Ms. Abercrombie also made these verbal misrepresentations to Jerrilove Crockett on or about October 30, 2020, when they looked at the house together.

61.     The Owners reasonably relied on these misrepresentations from Ms. Abercrombie when they paid the $64,733, and waited for months for the Defendants to come back to the home and fix the defects and finish the home.

62.     The Owners have been damaged as a result of these misrepresentations of material facts, as set forth herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request all damages allowed under the law, plus all interest, costs, fees, and any other relief that this court deems appropriate.

## Count VI
## Fradulent Concealment
## (All Defendants)

63.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

64.     Defendants actively or passively concealed material facts from the Owners that they had a duty to disclose, including that they never intended to fix defective work on the home, that they had no intention of completing the work they were paid to perform on the home, and that they had not obtained a certificate of occupancy for the home.

65.     Defendants concealed these material facts from the Owners on or about October 20, 2020, October 30, 2020, just before the Owners moved into the home on November 8, 2020, and when responding to Jerrliove's text after the Owners moved into the home on November 8, 2020.

66.     Defendants had knowledge of these material facts they concealed, and intended to conceal them so that the Owners would make the final payment of $64,733, and so that they could delay any work on the home and avoid fixing the defects, and then charge them another $45,853.72 for work they wrongfully insist on being paid.

67.     The Owners, in the exercise of diligence and caution, could not have discovered these facts.

68.     The Owners justifiably relied on the Defendants when making the final payment of $64,733, moving into the home, and waiting for months for the Defendants to come back to finish the home and repair the defects.

69.     The Owners have been damaged as a result of the Defendants' fraudulent concealment of material facts, as set forth herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request all damages allowed under the law, plus all interest, costs, fees, and any other relief that this Court deems appropriate.

## Count VII
## Attorneys' Fees, Costs, and Expenses
### (All Defendants)

70.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

71.     The Owners are owed their attorney's fees, costs, and expenses due to the Defendants' breach of contract and other wrongful actions, as set forth herein.

72.     The Owners are entitled to reasonable, fees, costs, and expenses, pursuant to Section 21 of the Contract.

73.     Additionally, the Defendants have been stubbornly litigious, acted in bad faith, and have caused Plaintiffs unnecessary delay and expense.

74.     The Owners are entitled to recover all reasonable fees, costs, and expenses under O.C.G.A. § 13-6-11.

WHEREFORE, PREMISES CONSIDERED, the Owners seek all reasonable attorney's fees, costs, and expenses from the Defendants.

## Count VIII
## Punitive Damages

75.     Plaintiffs adopt and incorporate all preceding paragraphs as if set forth in full herein.

76.     Defendants' actions showed willful misconduct, malice, wantonness, and/or recklessness on her part, as set forth herein.

77.     Plaintiffs are entitled to punitive damages as a result of Defendant's actions, in an amount to be proven at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs seek all punitive damages to which they are entitled under the law.

**Plaintiffs Demand Trial by Jury**

Respectfully Submitted, this 19th day of April, 2021

POOLE HUFFMAN, LLC

/s/ W. Drake Blackmon
W. Drake Blackmon
Georgia Bar No. 375337
3562 Habersham at Northlake
Building J, Suite 200
Tucker, GA 30084
(404) 373-4008
Facsimile: 888-709-5723
drake@poolehuffman.com

*Attorney for the Plaintiffs*

# EXHIBIT A

**GENERAL CONTRACTOR AGREEMENT (COST PLUS FEE)**

This General Contractor Agreement (the "Agreement") is made and effective as of April 24th, 2019 ("Effective Date") by and between Karla Payne Abercrombie DBA Cherry Bloom Homes & Designs AKA Cherry Bloom Designs LLC (the "Contractor") and Peter Westrick and Jerrilove Crockett, (the "Owner"). The Contractor and the Owner may be referred to individually as a "Party" or collectively as the "Parties."
.

**RECITALS**

**WHEREAS,** the Owner is the owner of the Property (as defined below); and

**WHEREAS**, the Owner wishes to engage the Contractor as a general contractor to perform certain Work (as defined below) on the Property for the Owner in accordance with the drawings and specifications attached as Exhibit A hereto and on the terms and conditions set forth below; and

**[WHEREAS,** the Contractor is registered with the state as a contractor, and has a registration License number of RBQA006530.

**WHEREAS,** the Contractor wishes to perform the Work on the Property in accordance with the drawings and specifications attached as Exhibit A hereto and with the terms of this Agreement; and

**WHEREAS**, each Party is duly authorized and capable of entering into this Agreement.

**NOW THEREFORE**, in consideration of the above recitals and the mutual promises and benefits contained herein, the Parties hereby agree as follows:

1.      **SCOPE OF WORK.**
The Contractor shall furnish all of the necessary materials, tools, machinery, supervision, and to perform all of the work described in Exhibit B hereto (the "Work"), all in accordance with the terms of this Agreement. The Work shall be performed on that certain property located at  Lot #7 Antler Ridge, Ellijay, GA 30540 AKA Antler Ridge Retreat (the "Property"), and as more specifically described in Exhibit B. The Contractor agrees that it will perform the services and provide the materials for which it is responsible, will accomplish this Work in the manner and in the time stated herein and in accordance with the drawings and specifications attached as Exhibit A.

2.      **TIME OF COMPLETION.**

Please refer to the approximate schedule of the scope of work. This schedule can change and will change. Certain scopes of work can move faster and some slower. The contractor will guarantee that they will do everything within their power to keep the job moving at a reasonable time frame. How ever some circumstances like weather, subcontractors, and back orders are out of the contractors control. The Parties agree that time is of the essence and that the Work to be performed under this Agreement shall therefore start on (or before) June 1st, 2019 and shall be [substantially] completed on (or before) January 31st, 2020 (Contractor plans to have the work completed by November 2019 with the weather, and subs cooperating)

3.  **COMPENSATION.**
**Please see the attached scope of work payment schedule and the layout of how Cherry Bloom Designs will receive payments.**

(a) Contract Sum; Payments.
    This is a cost plus contract, the amount has been broken down and this amount was carefully estimated. The cost of the project can change and the owners will be immediately notified. This is a cost plus contract and the contractor will receive 20% of the final cost of the project.
    1.  Subject to the provisions hereinafter set out, the Owner shall pay to the Contractor for the performance of this Agreement.
        1.  The actual cost of construction as defined in Section 3(b) below; plus, explanation of contractor fee in Section 3(c)

(b) Actual Cost of Construction. The "actual cost of construction," as used in Section above and subject to the restrictions listed in Section 3(c) below, shall include all items of cost and expense incurred by the Contractor in the performance of this Agreement, including costs and expenses of labor, materials for construction, equipment and fixtures, field engineering, sales taxes, workers' compensation insurance, social security, [job overhead expenses], and all other expenses directly connected with construction, [and including general overhead expenses], but excluding kickbacks, rebates, and discounts received in connection with the construction of the project.

(c) The contractor AKA Cherry Bloom Homes & Designs, AKA Cherry Bloom Designs LLC, AKA Karla Payne Abercrombie will be paid 20% above any and all cost associated with the project. This fee covers the general contractor fee, plus design fee, plus projector manager fee. With the 20% paid there is no price increases and the owners receive the full discounted material price that the contractor receives on all products and finishes that they purchase and subcontractor price as is given to Cherry Bloom Homes & Designs. All invoices and amounts paid will be transparent and available to the owners at any time.

1.  Subcontractors & Labor

All Payments made will be direct to Cherry Bloom Designs and the contractor will pay the subcontractors and all materials and fees. Cherry Bloom Designs will be responsible for the tax information to the subcontractors in consideration of the 1099's.
*There will be some labor that is paid hourly. How ever these workers are still considered as subcontractors and Cherry Bloom Designs is responsible for keeping up with such hours and the tax ramifications.

**4.  PROGRESS PAYMENTS.**
**Please Refer to Payment Schedule**

(a) <u>Payments; Invoices</u>. The Contractor may submit invoices for progress payments as often as needed to keep the job moving. Invoices shall be submitted at least 3 days before the date payment is desired. Invoices shall set forth anticipated total project costs incurred and shall be in a format consistent with the cost categories set forth in <u>Exhibit B</u>.

The Owner shall pay to the Contractor, within 72 hours after receipt of an invoice for a progress payment, 100% of the amount so requested, unless the Owner determines that any such payment or any part thereof is otherwise not properly payable pursuant to the terms of the Agreement.

(b) <u>Withholding of Payments</u>. Payment of the Contract Price may be withheld because of:
    (1)  defective Work not remedied within 30 days
    (2)  continuing failure to perform the Work in accordance with this Agreement or these general conditions;
    (3)  liens or claims filed; or
    (4)  failure of the Contractor to make proper payments to subcontractors, workers, or suppliers for labor, materials, or equipment.

(c) <u>Final Payment</u>. Upon final acceptance by the Owner of satisfactory completion of the scope which was agreed upon in <u>Exhibit B</u>, plus any additions, changes, and subtractions that were agreed upon and signed through out the project. The Contractor shall submit an invoice for the final payment of $1,000 with respect to the completed work.  <u>Back Orders & future completion dates:</u> If there are products or services that were back ordered or not completed with no fault to the contractor & due to the owners wishes. The contractor may still be paid the final payment of $1,000 and for the work that was completed with signed documentation that the "owners" are owed a specific product with a stated amount. If the contractor owes the owners a service that did not require a material

3

order the owner will not owe for this service until the work begins and this will be subtracted from the total project cost owed at the end and 100% payment will not be due until all final work is being completed. On such final payment, the Contractor shall provide to the Owner a final release of lien stating that the Contractor has no further claims or liens against the Owner or stated property for materials or labor supplied under this Agreement.

(d) <u>Waiver of Owner's Claims</u>. The making of final payment shall constitute a waiver of all claims by the Owner except those arising from:
   (1)   unsettled liens;
   (2)   faulty or defective work appearing after substantial completion;
   (3)   failure of the Work to comply with the requirements of <u>Exhibit A</u>.

(e) <u>Waiver of Contractor's Claims</u>. The acceptance of the final payment shall constitute a waiver of all claims by the Contractor except those previously made in writing and identified by the Contractor as unsettled at the time of the final payment.

(f) <u>Maintenance of Financial Records</u>. The Contractor shall keep, maintain, and preserve at its principal office throughout the term of the Agreement and for a period of 5 years after acceptance of the Work, full and detailed books, accounts, and records pertaining to the performance of the Agreement and the actual cost of construction, including without limitation, all bills, invoices, payrolls, subcontracting efforts, and other data evidencing, or in any material way related to, the direct and indirect costs and expenses incurred by the Contractor in the course of such performance.

(g) <u>Audit Rights</u>. The Owner shall have the right from time to time and at all reasonable times during the term of the Agreement and such period thereafter to inspect and audit any and all books, accounts and records at the office or offices of the Contractor where they are then being kept, maintained, and preserved pursuant to Section 4(g) above. The contractor has the right to enter the amounts payable records & documentation within 30 days of the activity. Should the owners choose to audit during the scope of work, the project will be on hold until the audit is completed.

(h) <u>Requirement on Subcontracts</u>. The Contractor shall include in all subcontracts, equipment leases, and purchase orders a provision requiring the subcontractor, equipment lessor, or supplier to certify its costs incurred in connection with the Work, even with subcontracts and price agreements, a subcontractor can increase their invoice for any realistic reason that the scope of work changes or prices of material have increased.

(i) <u>Payment Failure</u>. If the Owner shall fail to make any payment due, the Contractor may cease Work; <u>provided, however</u>, the Contractor shall resume performance of the Work and other obligations after payment or other resolution of the dispute.

## 5.  LICENSES AND PERMITS.

The Contractor shall comply with all state and local licensing and registration requirements for the type of work performed. The Contractor shall obtain and, at its expense, pay for any and all licenses required by law to accomplish any Work required in connection with this Agreement, the owner agrees to pay for any and all permits needed to complete this job.

## REPRESENTATIONS AND WARRANTIES.

(a) The Parties each hereby represent and warrant as follows:

(1)   Each Party has full power, authority, and right to perform its obligations under the Agreement.

(2)   This Agreement is a legal, valid, and binding obligation of each Party, enforceable against it in accordance with its terms (except as may be limited by bankruptcy, insolvency, moratorium, or similar laws affecting creditors' rights generally and equitable remedies).

(3)   Entering into this Agreement will not violate the charter or bylaws of either Party or any material contract to which that Party is also a party.

(4)   The drawings and specifications attached to this Agreement as Exhibit A are the final drawings and specifications of the Work, and form an integral part of this Agreement. Neither Party may add or otherwise vary additions said drawings and specifications without the prior written consent of the other Party. However, when the contractor is completing a remodel the layout could change without the contractor's ability to be specific to the design.

(5)   The Contractor may, in its discretion, engage licensed subcontractors to perform the Work; provided, however, that the Contractor must fully pay any such subcontractor and, in all instances, will remain responsible for the completion of this Agreement and the Work.

(b) The Contractor hereby represents and warrants as follows:

(1)   The Work shall be performed in a workman-like manner, according to standard industry practices and in compliance with all building codes and other applicable laws; provided, however, that if other standards or requirements are set forth in any attached plans and specifications, those other standards or requirements shall control.

(2)   The Work shall be performed by individuals duly licensed and authorized by law to perform said work, to the extent required by law.

(3)   The Contractor shall provide the Owner with appropriate releases or waivers of liens by the end of the project completion:

(4)   The Contractor shall remove any debris or other garbage from the Property, and leave the Property in broom clean condition after the Work has been completed.

(5)   The Contractor is responsible for paying all ordinary and necessary expenses of its staff.

(6)   The Contractor warrants that it is adequately insured for property damage and bodily injury while carrying General Liability Insurance and shall provide the Owner with proper certificates of insurance. The subcontractors carry workers comp on themselves as they are not employees of Cherry Bloom Designs LLC, Cherry Bloom Homes & Designs or Karla Payne Abercrombie. Each sub and hourly laborer must sign a waiver that the home owner is not liable should they become injured while working on their job site. The owners Home Owners insurance or Builder Risk Insurance with Liability also can offer coverage for any liability that could carry over to the home owners to give them extra protection. The owners are responsible for discussing and verifying such coverage with their agent or carrier.

(7)   The Contractor shall obtain all necessary approvals from local authorities or other statutory bodies concerned for the Work and shall hold the Owner harmless for any violations and accordingly indemnify the Owner.

(8)   The Contractor shall obtain insurance to protect itself against claims for property damage, bodily injury, or death due to its performance under this Agreement which is General Liability Insurance.

(9)   The owners shall obtain homeowners insurance or builders risk insurance to cover their structure and asset.

(c)   The Owner hereby represents and warrants as follows:

(1)   The Owner is the registered owner of the Property.

(2)   The Owner will make timely payments of amounts owed to the Contractor under this Agreement.

(3)   The Owner shall notify the Contractor of any changes to its procedures affecting the Contractor's obligations under this Agreement at least 10 days prior to implementing such changes.

(4)   The Owner shall provide such other assistance to the Contractor as it deems reasonable and appropriate.

## 6.  WARRANTY.

(a) <u>Correction of Defective Work</u>. The Contractor shall promptly correct any Work rejected as defective or as failing to conform to <u>Exhibit A</u>, whether observed before or after substantial completion and whether or not fabricated, installed, or completed, and shall correct any Work found to be defective or nonconforming within a period of 1 year[s] from the date of substantial completion of the Agreement or within such longer period of time as may be prescribed by law. The Contractor shall correct these mistakes within a reasonable time after receiving the Owner's written instructions and at its own cost (unless otherwise agreed by the Parties); <u>provided, however</u>, that the Contractor shall not be required to correct at its own cost any damage that occurred after completion of the Work, unless the Parties agree that such damage is because of an injury that took place

before the Work was completed. Any mechanicals including: electrical, plumbing, heating & air, and appliances have warranties provided by the company the supplied the services.

(b) <u>Normal Wear and Tear Only</u>. The Contractor shall only be responsible for damages sustained by the Owner under conditions of normal wear and tear, and shall under no circumstances be responsible for damages or losses caused by wear and tear, misuse, neglect, negligence, abuse, or accident, or because of or arising from any risk insured against in terms of the homeowner's insurance policies normally issued by a reputable insurance company for residential properties. The Contractor shall under no circumstances be liable for any consequential loss or damage.

## 7.   TERMINATION.

This Agreement may be terminated:

(a) By either Party on provision of 60 days' written notice to the other Party, with or without cause.

(b) By the Owner, if the Contractor defaults or persistently fails or neglects to carry out the Work or fails to perform any provision of the Agreement after 30 days' written notice to the Contractor. Unless to correct an issue is coming from an item that is back ordered or delayed order and the contractor can prove with documentation that they ordered the item within the 30 days and are currently waiting on the item needed to repair the issue to arrive.  If the contractor can't provide documentation they are indeed working to remedy the issue Without prejudice to any other remedy the Owner may have, the Owner may make good such deficiencies and may deduct the cost thereof from the payment due the Contractor or, at the Owner's option, may terminate the Agreement and take possession of the site and of all materials and equipment.

(c) By the Owner at any time and without prior notice, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directives of the Owner, or is guilty of serious misconduct in connection with performance under this Agreement.

(d) The contractor may terminate the contract with a 30-day notice and at completion of the current stage so that the owner doesn't lose any money paid towards the scope of work and the contractor. After completion of current stage, the contractor can cancel the contract with a 30-day notice if the contractor feels that they have been unable to satisfy the home owner & can supply multiple situations in which the contractor has had situations where the owners weren't satisfied with the contractor's abilities, or if the contractor becomes ill and is unable to carry out the task agreed upon.

In the event of termination not the fault of the Contractor, the Company shall promptly pay the Contractor according to the terms of <u>Exhibit A</u> for services rendered before the

7

effective date of the termination. The Contractor acknowledges and agrees that no other compensation, of any nature or type, shall be payable hereunder following the termination of this Agreement.

### 8.   ACCESS TO WORK.

The Owner, the Owner's representatives, and public authorities shall at all times have access to the Work.

### 9.   NOTICE OF RIGHT TO CANCEL.

**THE OWNER HAS AN UNCONDITIONAL RIGHT TO CANCEL THE CONTRACT UNTIL MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE AGREEMENT IS SIGNED. CANCELLATION MUST BE DONE IN WRITING.**

### 10. ADDITIONAL AGREEMENT TERMS.

The Owner and the Contractor hereby agree to the following additional terms:
_____NA _____

### 11. ASSIGNMENT.

The rights and the duties of the Contractor under this Agreement are personal, and may not be assigned or delegated without the prior written consent of the Owner. The Owner may assign its rights and duties under this Agreement with the prior written consent of the Contractor.

### 12. SUCCESSORS AND ASSIGNS.

All references in this Agreement to the Parties shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the Parties.

### 13. NO IMPLIED WAIVER.

The failure of either Party to insist on strict performance of any covenant or obligation under this Agreement, regardless of the length of time which such failure continues, shall not be deemed a waiver of such Party's right to demand strict compliance in the future. No consent or waiver, express or implied, to or of any breach or default in performance of any obligation under this Agreement shall constitute a consent or waiver to or of any other breach or default in the performance of the same or any other obligation.

### 14. NATURE OF RELATIONSHIP.

The Contractor is not an employee of the Owner; the Contractor is working in its capacity as an independent contractor. The Contractor agrees to hold the Owner harmless and indemnify the Owner for any claims, including (but not limited to) liability insurance, workers' compensation, and tax withholding for the Contractor's employees.

### 15. NOTICE.

Any notice or other communication provided for herein or given hereunder to a Party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective Party as follows:

8

*General Contractor Agreement (Cost Plus Fee)*

If to the Owner:
Peter West-rick
Jerrilove Crockett


If to the Contractor:
Cherry Bloom Homes & Designs
1799 Boardtown Road
Ellijay, GA 30540

## 16. CHANGE ORDERS.

All changes and/or deviations in the Work ordered by the Owner must be in writing as a change order, a form of which is attached as <u>Exhibit C</u> hereto and made part hereof. The Contract Price will be increased or decreased accordingly by the Parties' agreement. Any claims that the Contract Price should be increased based on changes and/or deviations in the Work must be presented to the Owner by the Contractor in writing. The Owner's written approval of such Contract Price increase must be obtained by the Contractor before any change and/or deviation in the Work is started. The valuation of the Contract Price change will be assessed on the basis of the valuation of similar work included in this Agreement.

If the Owners make changes that delays the project, the owners understand and will be responsible for any price increases due to losing their place in schedule with the subcontractors, will owe the contractor for their time changing the schedule and lining up the change, and also will owe for any and all increases due to the delay with materials and labor.

**Remodels: In the event the contractor is completing a remodel the contractor can not guarantee the exact scope of work, plan, or price. How ever the contractor will immediately update the owners of any changes to receive a written agreement of the change to the project whether the change is structural or monetary.**

## 17. OWNERSHIP OF DRAWINGS AND OTHER ITEMS.

All drawings, reports, designs, sketches, working drawings, shop drawings, documents, certificates, plans, specifications, estimates, memoranda, analyses, calculations, models and other tangible evidence of the Contractor's work product prepared in connection with the Work shall become and remain the sole property of the Owner. The Contractor may retain copies of its work product for its records; <u>provided, however</u>, that any use thereof (other than with respect to the Work) without the written consent of the Owner is prohibited. Any devices (other than equipment or devices which constitute part of the Work) or methods now being used in the marketplace, and incorporated into the project, are not considered to be property of the Owner. Innovative construction methods or mechanical devices developed by the Contractor or its subcontractors and used in

9

connection with the Work are not considered the property of the Owner unless such methods or devices were developed by the Owner or the Owner's separate contractors.

### 18. TYPES OF MATERIALS.

All materials used by the Contractor in performing the work shall be new, in compliance with all applicable laws and codes, and covered by a manufacturer's warranty (if appropriate) [except as follows.

**OWNERSHIP OF MATERIALS.**

Any materials that are unfixed and required to perform the Work and that are delivered to the Property under this Agreement shall remain the property of the Contractor until they have been paid for by the Owner.

### 19. MATERIALS IN SHORT SUPPLY.

If any of the materials set out in Exhibit A hereto are in short supply or are unavailable for an unreasonable amount of time, the Owner shall select alternative material of similar quality from alternative (and readily available) materials proposed by the Contractor. The responsibility for paying any difference in price between the original materials and the alternative materials shall lie with the Owner.

### 20. MODIFICATION.

No amendment, addendum, change, or modification of this Agreement shall be valid unless in writing and signed by both Parties.

### 21. GOVERNING LAW.

This Agreement shall be governed by the laws of the state of Georgia.  In the event that litigation results from or arises out of this Agreement or the performance thereof, the Parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

### 22. COUNTERPARTS/ELECTRONIC SIGNATURES.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  For purposes of this Agreement, use of a facsimile, e-mail, or other electronic medium shall have the same force and effect as an original signature.

### 23. SEVERABILITY.

Whenever possible, each provision of this Agreement, will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality, will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed, and enforced in

10

such jurisdiction as if such invalid, illegal, or unenforceable provisions had never been contained herein.

24. **ENTIRE AGREEMENT.**

This Agreement, constitutes the final, complete, and exclusive statement of the agreement of the Parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the Parties.

25. **HEADINGS.**

Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**OWNER**          Peter Westrick

By:_____

Date:_____04/25/2019_____

Title:

Jerrilove Crockett

By:_____

Date:_____04/25/2019_____

Title:

**CONTRACTOR**          Cherry Bloom Homes & Designs

DBA Karla Payne Abercrombie

By: _____

Date:_____

Title:

12

**EXHIBIT A**
**DRAWINGS AND SPECIFICATIONS**

(attach to Agreement)

**EXHIBIT B**

**SCOPE OF WORK**

**See Attached explanation**

**Karla Payne Abercrombie AKA Cherry Bloom Homes & Designs will be constructing a new home at Lot#7 Antler Ridge. The home will be approx. 2000 sq.ft on the main floor with a large back porch across the back and a front porch. The main floor will have 1 master suite with a large bedroom, 1 bathroom, a walk in closet, laundry, an open floor plan with kitchen, dining, and living space, along with a guest half bath and mud room. The home will also have a full basement which will be stubbed in for a kitchen, 2.5 bathrooms & laundry. A partial basement finish will include running the appropriate plumbing, minimal electrical in a portion and full electrical in a portion, along with sheetrock in a 1000 sq.ft of the basement.**

**EXHIBIT C**
**FORM OF CHANGE ORDER**

Cherry Bloom Homes & Designs summary of payment and scope of work:

Cherry Bloom Homes will have a checking account with the owners. Before each stage of work whether that be 2 weeks to 30 days at a time. The owners will deposit said funds into the joint checking account. The contractor will have access to said funds at any time needed to pay the subcontractors as they complete their scope of work or in weekly draws. The owners will be notified as each check is written. The contractor requests up to 7 days to update the co construct account which the home owners can follow to keep constant updates and access to their project. The Co-construct account not be in operation as it is a new program for Cherry Bloom Homes. The Home Owners will receive all of the same information just in a different format. Even thou the project is laid out to take place in a certain order, the order may change, and materials, kitchen cabinets, windows, and other materials can be ordered at different times than what is on the schedule.
Thank you very much for your trust and for your business with Cherry Bloom Homes & Designs DBA Karla Payne Abercrombie. We take great pride in our work and also take your budget and your home at upmost priority. We can't wait to see your beautiful new masterpiece!!!!

Karla Payne Abercrombie
Cherry Bloom Homes & Designs

*General Contractor Agreement (Cost Plus Fee)*

# Cherry Bloom Homes and Designs

## PROJECT PROFITABILITY FOR JERRILOVE'S ANTLER RIDGE RETREAT (WITHOUT TIME COSTS)
### All Dates

|  | TOTAL |
|---|---|
| Income |  |
| **Total Income** |  |
| GROSS PROFIT | **$0.00** |
| Expenses |  |
| Bathroom Vanities | 4,320.00 |
| Counter Tops | 5,000.00 |
| Door knobs & light bulbs | 1,850.00 |
| Electric | 19,320.00 |
| exterminating | 1,200.00 |
| Fire Place insert | 1,560.00 |
| Flooring | 10,800.00 |
| Foundation | 39,600.00 |
| Framing Labor | 21,000.00 |
| Gas Lines | 1,800.00 |
| Grading and Septic | 36,000.00 |
| Gravel Expense | 2,500.00 |
| Gutters | 2,000.00 |
| Heating & Air | 15,600.00 |
| House Plan Designs | 2,160.00 |
| Insulation | 6,450.00 |
| Interior Trim & wood | 27,000.00 |
| Janitorial | 8,800.00 |
| Kitchen Cabinets | 14,400.00 |
| Lighting | 7,000.00 |
| Lumber and Materials | 70,000.00 |
| Masonry | 6,000.00 |
| Misc. | 1,800.00 |
| Paint Expense | 13,200.00 |
| Plumbing | 13,000.00 |
| Plumbing Fixtures | 7,500.00 |
| Porch | 3,600.00 |
| Roofing | 7,200.00 |
| Sheetrock | 10,000.00 |
| Siding Labor | 10,900.00 |
| Siding Material | 21,600.00 |
| Tile Work | 9,000.00 |
| Utilities | 1,800.00 |
| **Total Expenses** | **$403,960.00** |
| NET OPERATING INCOME | **$ -403,960.00** |
| NET INCOME | **$ -403,960.00** |

# The Antler Ridge Retreat price break down

**Phase 1-** Phase 1 will Dry in the home (The first 75 days)
  - Grading
  - Septic
  - Foundation
  - Gravel Expense
  - Framing
  - Framing Materials
  - Roofing
  - Fire place insert
  - Exterminating
  - Janitorial (Dumpster and Porta potty)
************** Total=$191,820

**Phase 2-** Phase 2 Mechanics and Ordering custom cabinetry (Day 75-105)
  - Electrical
  - Plumbing
  - HVAC
  - Kitchen Cabinet order
  - Insulation
************** Total=$70,570

**Phase 3-** Phase 3 (Wall finishing the outside and inside, masonry, tile, order lighting, plumbing fixtures) (Days 105-150)
  - Siding Material & Labor
  - Masonry work
  - Tile work
  - Sheetrock
  - Interior trim and wood
************** Total=$105,600

**Phase 4-** Painting and Finishing (Day 150-180)
************** Total= $35,970

*************Grand Total Of $403,960****************

*Nada Abercrombie*   6-14-19

# Cherry Bloom Homes and Designs

## ANTLER RIDGE RETREAT
### All Dates

|  | TOTAL |
|---|---|
| Income |  |
| Total Income |  |
| GROSS PROFIT | $0.00 |
| Expenses |  |
| Bathroom Vanities | 4,320.00 |
| Counter Tops | 5,000.00 |
| Door knobs & light bulbs | 1,850.00 |
| Electric | 19,320.00 |
| exterminating | 1,200.00 |
| Fire Place insert | 1,560.00 |
| Flooring | 10,800.00 |
| Foundation | 39,800.00 |
| Framing Labor | 21,000.00 |
| Gas Lines | 1,800.00 |
| Grading and Septic | 36,000.00 |
| Gravel Expense | 2,500.00 |
| Gutters | 2,000.00 |
| Heating & Air | 15,600.00 |
| House Plan Designs | 2,160.00 |
| Insulation | 6,450.00 |
| Interior Trim & wood | 27,000.00 |
| Janitorial | 8,800.00 |
| Kitchen Cabinets | 14,400.00 |
| Lighting | 7,000.00 |
| Lumber and Materials | 70,000.00 |
| Masonry | 6,000.00 |
| Misc. | 1,800.00 |
| Paint Expense | 13,200.00 |
| Plumbing | 13,000.00 |
| Plumbing Fixtures | 7,500.00 |
| Porch | 3,600.00 |
| Roofing | 7,200.00 |
| Sheetrock | 10,000.00 |
| Siding Labor | 10,900.00 |
| Siding Material | 21,600.00 |
| Tile Work | 9,000.00 |
| Utilities | 1,800.00 |
| Total Expenses | $403,960.00 |
| NET OPERATING INCOME | $ -403,960.00 |
| NET INCOME | $ -403,960.00 |

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| PETER WESTRICK, | ) | |
| JERRILOVE CROCKETT, | ) | |
| | ) | CIVIL ACTION FILE |
| NO. | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KARLA PAYNE ABERCROMBIE | ) | |
| d/b/a CHERRY BLOOM HOMES & | ) | |
| DESIGNS; CHERRY BLOOM | ) | |
| HOMES & DESIGNS, LLC | ) | |
| | ) | |
|     Defendants. | ) | |

## DECLARATION OF DAVID DICKERSON

• My name is David Dickerson. I am of legal age, under no legal disability, and make this declaration based upon personal knowledge. I authorize this Declaration for use by counsel for Peter Westrick and Jerrilove Crockett (the "Owners") in this matter.

• I am the owner and licensed qualifying agent of Preferred Custom Builders, LLC. Preferred Custom Builders, LLC, is a licensed residential-light commercial contractor company in the State of Georgia. I hold the residential-light commercial contractor license on behalf of my company, Preferred Custom Builders, LLC, and control all work of the company. I have been working in the construction industry for over 30 years. I also have a structural engineering degree from Southern Technical Institute in Marietta, Georgia, which is now Kennesaw State University.

• On April 13, 2021, I inspected the Owners' house located at 269 (Lot #7) Antler Ridge, Ellijay, Georgia 30540. Preferred Custom Builders,

LLC, has calculated the cost to repair and finish the defective and incomplete work that was observed during the inspection of the Owners' house.  The estimate comes to a total of $82,812.50.  A true and correct copy of the estimate is attached hereto.

- I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _19th_ day of April, 2021,


_David Dickerson Pres._

David Dickerson
Preferred Custom Builders, LLC

**PREFERRED CUSTOM BUILDERS**
**PO BOX 4577**
**CANTON GA 30114**
**404-312-0283**

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | **BUDGET** | | |
| | | | | |
| | | ESTIMATED COST | DRAWS | TOTALS |
| DESCRIPTION | | | | |
| ARCHITECTUAL | | | | 0 |
| PERMITS | | | | $ - |
| ENGINEERING | | | | $ - |
| DEMOLITION | | $ 7,000.00 | | $ 7,000.00 |
| CLEARING | | | | $ - |
| BACKFILL | | | | $ - |
| FINAL GRADING | | | | $ - |
| SEPTIC TANK | | | | |
| EROSION CONTROL | | | | $ - |
| FOUNDATION | | | | $ - |
| GRAVEL | | | | $ - |
| STEEL | | | | $ - |
| SLAB LABOR | | | | $ - |
| SLAB MATERIAL | | | | $ - |
| WATERPROOFING | | | | $ - |
| FRAMING MATERIAL | | | | $ - |
| FRAMING LABOR | | | | $ - |
| FIRE PLACE | | | | $ - |
| ROOFING MATERIAL | | | | $ - |
| ROOFING LABOR | | | | $ - |
| WINDOWS/DOORS MATERIAL | | | | $ - |
| WINDOW/DOOR LABOR | | | | $ - |
| SIDING/CORNICE MATERIAL | | | | $ - |
| SIDING CORNICE LABOR | | | | $ - |
| INSULATION | | | | $ - |
| HVAC | | | | $ - |
| PLUMBING | | $ 3,500.00 | | $ 3,500.00 |
| ELECTRICAL | | $ 1,850.00 | | $ 1,850.00 |
| SHEETROCK | | $ 4,500.00 | | $ 4,500.00 |
| TRIM MATERIAL | | $ 4,750.00 | | $ 4,750.00 |
| TRIM LABOR | | $ 12,000.00 | | $ 12,000.00 |
| CONSTRUCTION CLEAN | | $ 1,500.00 | | $ 1,500.00 |
| FINAL CLEAN | | $ 1,200.00 | | $ 1,200.00 |
| PAINT INTERIOR | | $ 5,200.00 | | $ 5,200.00 |
| PAINT EXTERIOR | | | | $ - |
| GUTTERS | | | | $ - |
| PORTABLE TOILET | | | | $ - |
| DUMPSTERS | | $ 550.00 | | $ 550.00 |
| WOOD | | $ 1,850.00 | | $ 1,850.00 |
| CARPET | | | | $ - |
| DRIVEWAY LABOR | | | | $ - |
| DRIVEWAY MATERIAL | | | | $ - |
| DECK MATERIAL | | | | $ - |

**PREFERRED CUSTOM BUILDERS**
**PO BOX 4577**
**CANTON GA 30114**
**404-312-0283**

| | | | | |
|---|---|---|---|---|
| DECK LABOR | | | $ | - |
| CABINETS KITCHEN | $ | 2,500.00 | $ | 2,500.00 |
| CABINETS BATHROOMS | $ | 1,000.00 | $ | 1,000.00 |
| LAUNDRY ROOM CABINETS | | | $ | - |
| TOPS KITCHEN | $ | 2,500.00 | $ | 2,500.00 |
| TOPS BATHROOMS | | | $ | - |
| LAUNDRY ROOM TOPS | | | $ | - |
| TILE MATERIAL | $ | 4,500.00 | $ | 4,500.00 |
| TILE LABOR | $ | 6,200.00 | $ | 6,200.00 |
| GARAGE DOORS | | | $ | - |
| BRICK | | | $ | - |
| ROCK | | | $ | - |
| RETAINING WALL LABOR | | | $ | - |
| RETAINING WALL MATERIAL | | | $ | - |
| PLUMBING FIXTURES | $ | 1,500.00 | $ | 1,500.00 |
| PUNCHOUT | | | $ | - |
| SHOWER DOORS | | | $ | - |
| FLOOR PROTECTION | $ | 1,850.00 | $ | 1,850.00 |
| DUST CONTAINMENT | $ | 1,500.00 | $ | 1,500.00 |
| LOCK SETS | $ | 800.00 | $ | 800.00 |
| LIGHTS | | | $ | - |
| APPLIANCES | | | $ | - |
| LANDSCAPING | | | $ | - |
| | | | | |
| | | | | |
| | | | | |
| SUB TOTAL | $ | 66,250.00 | $  - | $ 66,250.00 |
| OVERHEAD/PROFIT 20% | $ | 16,562.50 | | |
| | | | | |
| | | | | |
| TOTAL | $ | 82,812.50 | | |

# EXHIBIT C



3562 Habersham at Northlake
Building J, Suite 200
Tucker, Georgia 30084

Tel:  (404) 373-4008
Fax:  (888) 709-5723
Poolehuffman.com

January 27, 2021

**VIA STATUTORY OVERNIGHT MAIL**

Ms. Karla Abercrombie
Cherry Bloom Homes & Designs, LLC
1799 Boardtown Road
Ellijay, GA 30540

> **RE:** **Peter Westrick and Jerrilove Crockett/Lot #7 Antler Ridge**
> **Notice to Contractor of Default and Notice of Claim under the**
> **Right to Repair Act**

Dear Ms. Abercrombie:

This firm represents Peter Westrick and Jerrilove Crockett (hereinafter the "Owners"). On or about April 24, 2019, the Owners entered into the General Contractor Agreement (the Contract) with you and Cherry Bloom Homes & Designs, LLC (the "Contractor" or "You"), for construction of the Owners' home at 269 Antler Ridge, Ellijay, Georgia 30540. Pursuant to Section 7 of the Contract, you are hereby notified that you have breached the Contract and are in default.

You have materially breached the Contract for, among other things, the following reasons:

1) Pursuant to Section 6(a) of the Contract, your failure to correct defective work after being notified and requested to do so by the Owners;
2) Failure to complete and carry out all work you agreed to perform on the home;
3) Failure to perform the work on the home in a good and workmanlike manner pursuant to Section 5(b) of the Contract; and
4) Delay in completion of the home caused by your refusal to correct defects and finish your work.

The Owners paid you in full on October 30, 2020, in the amount of $64,733.00. You represented to them that this was the final payment for your work on the home. The Owners then moved into their home on November 9, 2020. When they moved in, you told them to examine the home and submit a list of any items that need to be repaired/finished. Pursuant to your request, and pursuant to their rights under the Contract and law, the Owners submitted their list of items that need to be repaired/completed to you on November 24, 2020. In response, you demanded payment of an additional $45,853.72 on January 4, 2021. This is your most recent request for "final payment" for work on the home. You stated that once you receive this new "final

Karla Abercrombie
Cherry Bloom Homes & Designs, LLC
Page 2 of 2

payment," you will then "discuss any final punch out that is due to you under our warranty."

Your request for another $45,853.72 is denied.  You have refused to correct deficiencies with the home and complete all work you agreed to perform, leaving the Owners with a home that is both unfinished and contains defects.  The list of construction defects and items that you need to address/complete is enclosed herein as Exhibit "A".  A flash drive containing photographs of defects with the home is also included with this letter.

This is also a notice of claims under OCGA § 8-2-35, *et seq.,* the Right to Repair Act.  Pursuant to OCGA § 8-2-38, the Owners are notifying you of the construction defect claims they have.  The defects are set forth in detail in Exhibit "A."  These items require immediate repair/completion.

The claims that the Owners have against you because of your actions include breach of contract, negligence, and breach of warranty, among others.  In addition to breaching the contract, you performed negligent work and negligent management/supervision of your workers and subcontractors on the project.  You have also breached the warranties contained in the contract by failing to perform work in a good and workmanlike manner, and failing to correct defective work.  Furthermore, the Owners reserve the right to make claims for fraud should their investigation reveal that you have overcharged them for work and materials on the construction of their home.

The Owners demand that you honor your contract by repairing the defects and completing the work listed in Exhibit "A."  If you fail to complete and repair the items in the home that are set forth in the attached list within 30 days, your Contract will be terminated.  The Owners will then have your defective work repaired and the home will be completed.  You will then be responsible for payment of all costs and expenses incurred to repair and complete the work on the home, pursuant to Georgia law and Sections 5,6, and 7 of the Contract.

Please direct your response to me, as counsel for the Owners.  All rights of the Owners are fully reserved.

Sincerely,

W. Drake Blackmon
drake@poolehuffman.com

cc:    Peter Westrick;
       Jerrilove Crockett

## Exterior

1. There is a large, visible ridge where the deck roof meets the house roof. This ridge runs down both side of the roof, from the peak to the eaves.

2. The outside trim/siding around the majority of the windows was cut incorrectly, causing the foil window wrap underneath to be visible.

3. The screen in the master bathroom is either broken are installed incorrectly.

4. There is a large gap between the siding and exterior roof rafter above the side door on the west side of the house.

5. Exterior window trim on the office window and great room window is loose.

6. There is only one coat of stain on the decks, numerous places where there is no stain at all.

7. Gray stain/paint was spilled on the lower level exterior lights, doors, knobs, threshold sills, and black deck railing spindles and never removed.

8. The exterior, corner flood lights on the front and back of the house do not work properly. They either flash on and off intermittently or do not come on at all.

9. The front porch lanterns are loose and mounted to improper sized wood backing.

10. The siding on the front porch has a large gap at the base where it meets the deck boards, exposing the plastic house wrap underneath.

11. Plastic house wrap is visible in several places on the exterior of the home due to improperly cut or installed wood siding.

12. There are several areas of the exterior siding that appear to have received either minimal paint/stain or none at all.

13. Some exterior deck boards are popping up and several deck screws not seated properly (tripping hazard).

14. Exterior, great room window sill stained (presumably from glass cleaner by cleaning crew).

    **Cleaning:** We were charged a fee for a service to deep clean the entire house, including windows and glass doors. This was done prior to the deck being stained. Before we were able to move in, a worker was sent out to power wash the outside decking so it could be stained. This individual covered the exterior glass doors and windows with water spots and dirt. It was never re-cleaned.

## Interior

15. **Front door area:**

    1.    Only one coat of paint on wall next to china cabinet.
    2.    White paint on threshold.
    3.    Casing not sanded around the door.

16. ## Kitchen:

    1. Kitchen counter top to left of range is chipped and needs to be replaced.

    2. Black paint chipped off island light bar.

    3. Large gaps between floor boards in two places.

    4. Dishwasher installed crooked and missing exterior rubber side seals (intentionally cut away by plumber during install.

    5. Range hood/vent/ was never installed.

    6. Floating shelves were never installed.

    7. One cabinet door has missing/damaged handle.

17. ## Living room:

    1. No gas log fireplace insert. Chipped paint and smeared grout on front of black metal fireplace cabinet.

    2. Drips and spills apparent in polyurethane on floor boards.

    3. HVAC vent covers (throughout upstairs area) were never replaced as promised. (paint on existing covers is chipped and scratched.)

    4.Painters got white over spray paint on barn doors.

18. ## Office:

    1. Wood paneling above outside door is bowed and popping out.

    2. Wood above great room door is bowed out.

    3. White paint spilled on gray wood paneling. Drips in white paint on window trim.

4. Office pocket doors installed incorrectly and goes off track during closing.

5. HVAC vent cover missing.

## 19. Laundry Room

1. Pocket door damaged and missing parts.

2. Window screen missing.

## 20. Half bath/Hall/Pantry

1. Large gap between floor boards and no second coat of polyurethane on floor.

## 21. Mudroom

1. Window/casing is installed crooked and not level.

## 22. Master bathroom:

1. Stand alone bath tub is damaged and needs to be replaced.

2. No electrical to under cabinet shelf outlets. (110 volt and USB)

3. Wood trim between wood paneling and shower stall is incomplete.

4. Grout around shower is incomplete.

5. Paint on tile in shower.

6. Toilet closet faucet hot and cold reversed.

7. Toilet closet door hardware incomplete.

8. Chandelier over bath tub needs to be installed.

9. Left side shower faucet has insufficient hot water supply.

10. Shower drains very slowly. 1-2 inches of standing water after normal shower.

## Master bedroom:

1. Ceiling fan doesn't work.

## Paneling and Painting:

Most of the interior wood paneling upstairs and in the stairwell has holes, chips, splits, cracks, and gouges. This does not appear to be the 'premium, culled' wood that we paid for and were led to believe was being used in the house.
The master toilet closet, half bath and stairwell are of especially poor quality.
The interior paint of the entire upstairs of the house is well below the quality we were promised. It does not appear to be the one coat primer and two coats of paint as stated by the contractor. One can clearly see no paint was applied to the gaps in the nickel-gap siding.  In several s
pots the door  and window trim was not sanded or puttied before being painted.

## **Basement:**

## Plumbing:

We advised the contractor that the hot water for entire basement area plumbing system was to run from a standard tank water heater located in the utility room. The entire upstairs was to be run from a tankless water heater located in the closet of the large guest bathroom. This was not completed per our agreement. Of the plumbing fixtures we can check downstairs, the small bathroom sink and shower are the only ones plumbed to the tank water heater.

## Great room:

1. Fire sprinkler holes in ceiling were cut to big.

2. Damage to drywall around ceiling light.

3. Paint on door thresholds.

4. Fireplace casing damaged with grout and gas log insert missing.

## Kitchen:

1. Cabinets installed incorrectly, large gaps between over range cabinet and other uppers. Gaps between base cabinets and range on both sides.

2. Kitchen sink is not installed to the hot water tank downstairs.

3. Kitchen hot and cold faucet is reversed.

4. Counter top is chipped and needs to be replaced.

## Small Bedroom/Bathroom:

1. Hot and cold water reversed in sink and shower.

2. Gap between shower walls and floor should be caulked.

3. Hole in shower wall near faucet should be sealed/caulked.

4. Tile on bathroom floor is very uneven. Needs to be removed and replaced.

## Large bathroom:

1. Tiles need to be replaced as several are too high.

## Half bath:

1. Toilet leaks.

## Large guest bedroom:

1. Door knob to bedroom installed crooked and door does not close properly. Exterior door knob is broken and has paint stain all over it.

Door from basement to the stairs is damaged and the door to the utility room trim not sanded and painted. The pocket doors throughout the house are missing parts and are not plumb or finished.